[No. 57214-8-I. Division One. January 29, 2007.]

KATHIE COSTANICH, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

---

550

*Robert M. McKenna, Attorney General,* and *Michael W. Collins, Assistant,* for appellant.

*Carol Farr (of The Law Office of Leonard W. Moen & Associates),* for respondent.

¶1 AGID, J. — Kathie Costanich and her husband, Ken, were foster parents devoted to caring for some of the neediest and most difficult foster children in the system. Costanich's foster home received accolades from the state, but she also regularly used profanity, sometimes swearing around her foster children. The Department of Social and Health Services (DSHS) found that Costanich's language

was emotionally abusive and revoked her foster care license. Both the administrative law judge (ALJ) and the superior court disagreed, concluding that Costanich's language did not constitute emotional abuse and did not justify revocation of her license. But the DSHS review judge substituted his own view of the evidence for that of the ALJ, based primarily on the hearsay testimony and reports of the Child Protective Services (CPS) investigator, and upheld the abuse finding and the revocation. Because the review judge exceeded his authority under DSHS hearing rules, we agree with the superior court and the ALJ and reverse his decision.

## FACTS

¶2 Costanich was a licensed foster parent in Washington for over 20 years. Her license allowed her to provide foster care for up to six children at a time, and she sometimes had waivers to care for additional children. All of these children had been victims of abuse or neglect, and many had severe behavioral, developmental, and medical problems. She specialized in violent, sexually aggressive youth and medically fragile infants. Costanich was also the president of Foster Parents of Washington State and a trainer for DSHS. Before the abuse allegations, the most recent state evaluation described the Costanich foster home as a "unique and valuable resource . . . unsurpassed by any foster home in the State."

¶3 During the summer of 2001, DSHS investigated an allegation that Costanich emotionally and physically abused her foster children, based on what K., one of her foster children, told his therapist.[1] At the time of the investigation, Costanich had six foster children living in her home: F. (17), K. (15), J. (12), P. (10), and two sisters, E. (8) and B. (4). Sandra Duron investigated the allegations for CPS and reported there was inconclusive evidence of physi-

---

[1] In order to protect the privacy of the foster children, we refer to them by their first initials.

cal abuse but the emotional abuse allegations were "founded." This finding was based primarily on two specific incidents. K. claimed that Costanich said, "I'll kill you bastard" to F., when she had to pull him off one of her female aides. The aide and F. had gotten into an altercation because F. was spying on her while she was sunbathing. K. also said Costanich told P., the only African-American child in the house, to move his "black ass." Additionally, he alleged Costanich had a general habit of swearing at the children and had called E. a "cunt." Later investigation resulted in allegations that Costanich also called E. a "bitch." On March 14, 2002, DSHS informed Costanich that it upheld the finding of emotional abuse after an internal review. On August 16, 2002, DSHS revoked Costanich's foster care license based primarily on this finding of abuse.

¶4 Costanich appealed both the finding of abuse and the revocation of her license in an administrative hearing. The ALJ overturned DSHS' decision, finding that the children had not been emotionally abused and were, in fact, "thriving" based on their therapists' and social workers' testimony. DSHS appealed this decision to the DSHS Board of Appeals. The review judge reversed the ALJ's initial decision. He found there was substantial evidence that Costanich had threatened to kill F., told P. to move his "black ass," called E. names, and sworn at the children in her home. The review judge concluded this constituted emotional abuse and justified revoking her license. Costanich sought judicial review, and the superior court reversed the review judge's final administrative decision. The court awarded Costanich attorney fees under the equal access to justice act (EAJA), RCW 4.84.350. DSHS appeals.

## DISCUSSION

¶5 The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of final

agency action.[2] When reviewing an agency action, we sit in the same position as the superior court, applying the standards of the APA directly to the record before the agency.[3] There are a number of statutory bases for setting aside an administrative decision, including: (1) the decision is not based on substantial evidence, (2) the agency has erroneously interpreted or applied the law, (3) the agency failed to follow a prescribed procedure, or (4) the order is inconsistent with a rule of the agency.[4] The party challenging an agency's decision has the burden of establishing error.[5]

## I. *Authority of the Review Judge*

 ¶6 The primary issue in this case is what level of deference the review judge owed the ALJ. DSHS relies on *Tapper v. Employment Security Department* for the proposition that the review judge has the power to make his or her own factual findings and to modify or set aside the findings of the ALJ.[6] But *Tapper* was not a DSHS case. Here, DSHS hearing rules delineate the authority of the review judge, and DSHS is bound by those rules.[7] WAC 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(1) states that in licensing and similar administrative cases, the review judge has the same decision-making authority as an ALJ.[8] But, in all other cases, the review judge cannot change the ALJ's hearing decision unless:

---

[2] RCW 34.05.510; *Conway v. Dep't of Soc. & Health Servs.*, 131 Wn. App. 406, 414, 120 P.3d 130 (2005) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)).

[3] *Conway*, 131 Wn. App. at 414.

[4] RCW 34.05.570(3).

[5] RCW 34.05.570(1)(a), .574(1).

[6] 122 Wn.2d 397, 404, 858 P.2d 494 (1993).

[7] *Deffenbaugh v. Dep't of Soc. & Health Servs.*, 53 Wn. App. 868, 871, 770 P.2d 1084 (1989).

[8] The other types of cases in which the review judge has the same authority as the ALJ are certification and related fines, rate-making, and parent address disclosure. WAC 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(1).

(a) There are irregularities, including misconduct of a party or misconduct of the ALJ or abuse of discretion by the ALJ, that affected the fairness of the hearing;

(b) The findings of fact are not supported by substantial evidence based on the entire record;

(c) The decision includes errors of law;

(d) The decision needs to be clarified before the parties can implement it; or

(e) Findings of fact must be added because the ALJ failed to make an essential factual finding. The additional findings must be supported by substantial evidence in view of the entire record and must be consistent with the ALJ's findings that are supported by substantial evidence based on the entire record.[9]

¶7 This standard requires significant deference to the ALJ, which is appropriate because an independent ALJ hears the case to "insure that the contestant has a fair and impartial fact finder."[10] If the review judge could simply substitute his own view of the evidence for that of the ALJ in every case, review by an ALJ would be superfluous. As we explained in *Deffenbaugh v. Department of Social & Health Services*, when considering a similarly-worded earlier version of the hearing rules, this deferential standard is "analogous" to appellate court review of a trial court's decision.[11]

¶8 DSHS fails to address WAC 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(2) and essentially argues this case should be treated as a licensing case under WAC 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(1), the section that gives the review judge wide latitude to substitute his own evidentiary findings and legal conclusions for those of the ALJ. But DSHS predicated its decision to revoke Costanich's license on a formal finding that she had emotionally abused the children. Findings of abuse are separate from licensing decisions and require the review judge to use the more

---

[9] WAC 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(2).

[10] *Deffenbaugh*, 53 Wn. App. at 871.

[11] 53 Wn. App. 868, 871, 770 P.2d 1084 (1989).

deferential standard of WAC 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(2).[12] DSHS cannot now argue that the licensing standard should apply to the abuse finding merely because the two decisions were reviewed together. This is particularly true because DSHS predicated the license revocation on its finding of abuse. There was no independent basis for the revocation. Thus, the review judge should have applied the standard of review for abuse cases, WAC 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(2).

## II. *Factual Findings*

¶9 Under WAC 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(2), the review judge was justified in substituting his factual findings for those of the ALJ only if the ALJ's factual findings were not supported by substantial evidence or if the ALJ failed to make an essential factual finding. Substantial evidence is that which is "sufficient to persuade a reasonable person that the declared premise is true."[13] The reviewing agency or court must accept the fact finder's " 'views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.' "[14] While hearsay is admissible in the administrative context, under WAC 388-02--0475(3) the fact finder may base a finding on hearsay evidence only if he or she finds that "the parties had the opportunity to question or contradict it."

¶10 Here, the review judge purported to apply the correct standard, reciting that the ALJ's findings needed to be changed because they were not supported by substantial evidence and the ALJ failed to make an essential factual finding. The ALJ found that, although Costanich used profanity around the children, her swearing was "never

---

[12] *See* WAC 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(4)(*l*)-(m) (listing abuse findings and licensing decisions as two separate kinds of decisions for which a party may seek review).

[13] *Albertson's, Inc. v. Employment Sec. Dep't,* 102 Wn. App. 29, 36, 15 P.3d 153 (2000) (citing *Galvin v. Employment Sec. Dep't,* 87 Wn. App. 634, 640-41, 942 P.2d 1040 (1997), *review denied,* 134 Wn.2d 1004 (1998)).

[14] *Freeburg v. City of Seattle,* 71 Wn. App. 367, 371-72, 859 P.2d 610 (1993) (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce,* 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

directed at the children." He also found that she told P. to move his "black ass." There was substantial evidence for these findings. He based them solely on the testimony of the adult witnesses at the hearing, including the children's therapists and the aides who worked in the Costanich home. The ALJ explicitly chose not to rely on the CPS investigator's hearsay statements about what the children told her. In contrast, the review judge based his decision to uphold the revocation of Costanich's license on four factual findings: (1) Costanich's telling F., "I'll kill you bastard," (2) her telling P. to move his "black ass," (3) her calling E. a "bitch" and a "cunt," and (4) her swearing at the children. The review judge added findings one and three, and finding four is in direct conflict with the ALJ's characterization of Costanich's swearing. The propriety of these three findings is at the core of Constanich's appeal.

¶11 Costanich argues that the DSHS review judge erred by reversing the ALJ's decision because he substituted his own factual findings for the ALJ's and relied on hearsay evidence that the ALJ specifically found lacked credibility. The review judge's three contested findings are all based primarily on the CPS investigator's hearsay statements, which the ALJ found not credible.

¶12 The review judge relied heavily on the investigator's claim that she took near-verbatim notes from her interviews with E., F., and K., none of whom testified before the ALJ. The review judge stated: "[T]he undersigned presumes that the statements of the children reported in Ms. Duron's near-verbatim notes are the words of the children rather than the interpretation or summary of Ms. Duron." But Duron herself admitted that she did not always take near-verbatim notes, stating on cross-examination that K. "wouldn't say much, so I just kind of summarized what he was saying." Duron conducted all but one of her interviews with the children without a third person present and did not record any of the interviews. The only documentary evidence of the interviews in the administrative record is her service episode reports (SERs), which represent the

data she entered into the computer from her handwritten notes. The original near-verbatim notes were not produced at the hearing. And the SERs show that she put words in the mouth of at least one of the children. When interviewing J., Duron asked, "When you say[ ], 'go to your fucken [sic] room' whom does she [Costanich] say that to[ ]?" But J. never claimed Costanich said that. Additionally, even the review judge acknowledged that there were a number of problems with Duron's reporting of her conversations with adults, including that she made up the statement of one witness and misquoted a number of others. The review judge acknowledged that Duron's reports of her interviews with adults were incredible but assumed that her interviews with the children were accurate, "near verbatim" recordings simply because she said so. The review judge's decision to give greater weight to Duron's hearsay testimony than to all the other witnesses who testified before the ALJ is clearly inappropriate under WAC 388-02--0600(2).

¶13 Costanich also argues that the review judge failed to "give due regard" to the ALJ's opportunity to observe the witnesses, as required by RCW 34.05.464(4). The review judge justified this lack of deference by asserting that the ALJ "failed to record any observations about 48 of the 49 witnesses."[15] This is a misreading of the record. While the ALJ specifically recorded the demeanor of only one witness, four pages of his decision are devoted to a section entitled "Credibility of Witnesses." In that section, the ALJ explicitly based his decision only on the testimony of the witnesses at the hearing, not on Duron's reports and hearsay statements. He found it was impossible to determine whether she was "taking the answers out of context or to know whether or not the answering party fully understood the nature of the question being asked." He also found K.'s statements as recorded by his therapist lacking in credibility. The review judge not only ignored the ALJ's credibility

---

[15] (Emphasis omitted.) *See* RCW 34.05.461(3) (requiring ALJ to identify "findings based substantially on credibility of evidence or demeanor of witnesses").

determinations, he also chose to base his decision on the very evidence the ALJ rejected as lacking credibility: the testimony of the CPS investigator and K.'s hearsay statements to his therapist. The review judge substituted his own view of the evidence for the ALJ's findings, which are supported by substantial evidence. This is clearly error under the deferential standard that applies to appeals from the ALJ's decision about abuse allegations.

¶14 The review judge also asserted that it was necessary to add his finding that Costanich called E. names because the ALJ did not make a specific finding that Costanich did not call E. a "bitch" or a "cunt." But the absence of a finding does not mean that the ALJ omitted a finding directly contrary to his other findings. Although Costanich admitted swearing when speaking to the children, the ALJ found that she did not direct her swearing at the children. Based on the nonhearsay testimony of all the adult witnesses, we conclude this finding meant that her swearing was not used to discipline, demean, or shame the children, but rather was just part of her vocabulary. Certainly, calling a child "bitch" or "cunt" would be considered swearing directed at the children. Thus, the ALJ's factual finding that Costanich did not direct her swearing at the children necessarily encompasses the worst of the statements the review judge attributes to her, including calling E. names. The review judge also added a finding that Costanich said "fuck you" to the children. This would have been classified as swearing directed at the children. As with his finding that Costanich called E. names, this finding was also based solely on the hearsay statements Duron reported and is not "consistent with the ALJ's findings that are supported by substantial evidence."[16] Because the review judge based his additional, contradictory factual findings solely on hearsay evidence the ALJ rejected as lacking credibility, we hold the review judge acted outside the scope of his authority under WAC 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(2) in adding them.

---

[16] WAC 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(2)(e).

III. *Error of Law*

¶15 Under WAC 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(2)(c), a review judge may change an ALJ's decision if it includes an error of law. As we noted earlier, this standard is analogous to an appellate court's standard of review.[17] In reversing the ALJ and ruling that Costanich's language toward her foster children constituted emotional abuse and violated foster care licensing regulations, the review judge stated that the ALJ made two errors of law: (1) he required evidence of actual harm, when only a "substantial risk" of harm is necessary to prove emotional abuse, and (2) he failed to find that swearing violates WAC 388-148-0470, a foster care licensing regulation.

A. *Emotional Abuse*

¶16 The review judge concluded that Costanich's language toward the children constituted emotional abuse under the regulation in effect at the time, former WAC 388-15-130(3) (1989), which provides in relevant part:

> Abusive, neglectful, or exploitative acts defined in RCW 26.44.020 . . .
>
> . . . .
>
> (d) Committing acts which are cruel or inhumane regardless of observable injury. Such acts may include, but are not limited to, instances of extreme discipline demonstrating a disregard of a child's pain and/or mental suffering.
>
> . . . .
>
> (g) Engaging in actions or omissions resulting in injury to, or creating a substantial risk to the physical or mental health or development of a child.[18]

Because there was no actual observable injury to the children, the ALJ had to determine whether telling an

---

[17] *Deffenbaugh*, 53 Wn. App. at 871.

[18] Former WAC 388-15-130(3) (1989), *repealed by* Wash. St. Reg. 02-15-098 and 02-17-045 (effective Feb. 10, 2003). The current version of this regulation, WAC 388-15-009(5), is similarly worded.

African-American child to move his "black ass" or swearing around the children was either cruel and inhumane or posed a "substantial risk" to the mental health or development of the children. Unfortunately, there is no case law interpreting former WAC 388-15-130(3) or providing examples of language that would create a substantial risk to the mental health of a child. But even Duron, the CPS investigator, who regularly decides what is and is not abusive, admitted that cursing at one's children is not per se abusive and that the language must be considered in context. Accordingly, the ALJ looked to the context of the language and considered the testimony of all of the medical professionals and social workers who had direct contact with the children, as well as the DSHS experts who testified but had not interviewed the children. He found:

> None of the experts who provided testimony on behalf of DSHS could say with any degree of certainty that there was a risk of harm. They spoke in terms of possibility not in terms of likelihood. All of those professionals who had direct contact with the children determined that they were thriving in the Costanich home environment. This is clearly a statement that the use of profanity around these children did not constitute a risk of harm because there was no harm.

¶17 It is clear from this statement that the ALJ found there was no "substantial risk" to the children from Costanich's use of profanity. But his last sentence, evaluating the risk of harm in the context of actual harm, is a misstatement of the law. The ALJ made several erroneous statements of this nature. Had the ALJ left out these statements, his opinion would have been unassailable. But despite his occasional recitation of the wrong standard, his ultimate conclusion that the evidence does not support a finding of "substantial risk" of harm is legally sound. Because WAC 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(2) imposes an appellate standard of review on the DSHS review judge, the mere recitation of the wrong standard in a few places by the ALJ does not warrant reversal where the ultimate legal conclusions were supported by the findings and those findings were based on substantial evidence.

B. *Violation of Foster Care Licensing Regulation*

¶18 The review judge asserted that the ALJ erred by failing to find that Costanich violated WAC 388-148-0470, which prohibits discipline that is "cruel, unusual, frightening, unsafe or humiliating," and lists "name calling" and "threatening" as two practices which are per se violations of foster care licensing regulations. The review judge erred in reversing the ALJ's conclusion because he relied primarily on his own additional findings, that Costanich called E. names and threatened F., which he lacked the authority to add under WAC 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(2).

¶19 He also ruled that the ALJ erred in finding that swearing does not constitute humiliating discipline because under *Morgan v. Department of Social & Health Services,*[19] "the use of profanity alone is sufficient to prove a violation." This is an unwarranted extension of the holding in *Morgan.* There, the court said the way in which Morgan used profanity was humiliating discipline, not that all profanity constitutes a per se violation.[20] In *Morgan*, the court did not explain how Morgan's swearing was humiliating for the children and did not specify exactly which statements it considered humiliating. The only specific allegation mentioned in *Morgan* is that the foster parent told one of the children to stop "acting like a little bitch."[21] While this is similar to the allegation that Costanich called E. a "bitch," that allegation was not proved. Further, the conclusion that all swearing is a violation of WAC 388-148-0470 is undercut by the fact that swearing is not on the list of per se violations. Thus the review judge erred in reversing the ALJ's decision that Costanich's swearing did not constitute humiliating discipline in violation of WAC 388-148-0470.

---

[19] 99 Wn. App. 148, 992 P.2d 1023 (2000).

[20] *Id.* at 155.

[21] *Id.* at 151.

## IV. *Attorney Fees*

 ¶20 The superior court awarded Costanich attorney fees under the EAJA, RCW 4.84.350, which provides in relevant part:

(1) Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. . . .

¶21 DSHS argues Costanich was not entitled to attorney fees because it was "substantially justified" in finding her language toward her foster children constituted emotional abuse and revoking her foster care license. "[A]gency action is substantially justified if it has a reasonable basis both in law and fact."[22] We review a determination that agency action was not substantially justified for abuse of discretion.[23] A court abuses its discretion when it bases its decision on untenable grounds or reasons.[24]

¶22 The superior court awarded Costanich attorney fees, finding that DSHS' actions were not substantially justified primarily because the DSHS review judge exceeded the scope of his power in reversing the ALJ. Although there are no cases holding that a DSHS review judge's decision falls within the definition of "agency action" for purposes of granting fees under the EAJA, the statutes defining "agency action" support such an award. RCW 4.84.340(2) states that "agency action" is defined by chapter 34.05 RCW. While RCW 34.05.010(3) does not specifically include or exclude adjudicative proceedings from the definition of

---

[22] *H&H P'ship v. State*, 115 Wn. App. 164, 171, 62 P.3d 510 (2003) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)).

[23] *Id.* (citing *Alpine Lakes Prot. Soc'y v. Dep't of Natural Res.*, 102 Wn. App. 1, 19, 979 P.2d 929 (1999)).

[24] *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 420, 97 P.3d 17 (2004) (quoting *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)), *aff'd*, 157 Wn.2d 90, 135 P.3d 913 (2006).

"agency action," a review board that conducts adjudicative proceedings falls within RCW 34.05.010(2)'s definition of what constitutes an "agency." In *Muckleshoot Indian Tribe v. Department of Ecology,* we held that the APA's definition of "agency action" must be applied broadly.[25] Thus, we hold that the review judge's decision constitutes agency action because he is part of the agency and his actions are not expressly excluded from the definition of "agency action."

¶23 Additionally, although DSHS was justified initially in its concerns about Costanich's use of profanity, the evidence before the ALJ shows that DSHS was not substantially justified in revoking her license once it became aware of the problems with Duron's investigation.

¶24 We conclude there was no abuse of discretion and affirm the superior court's award of fees. For the same reasons, Costanich is entitled to attorney fees on appeal under RAP 18.1.

¶25 We set aside the DSHS review judge's decision and reinstate the ALJ's decision. We affirm the superior court's decision to award Costanich attorney fees and award attorney fees on appeal on the same grounds.

APPELWICK, C.J., and COX, J., concur.

Reconsideration granted and opinion modified May 3, 2007.

---

[25] 112 Wn. App. 712, 722, 50 P.3d 668 (2002), *review denied,* 150 Wn.2d 1016 (2003).