181 P.3d 871 (2008)
Samantha KELLY, Michael Kelly, Courtney Kelly, Shad Kelly, Respondents,
v.
STATE of Washington; Department of Social and Health Services for the State of Washington; the Department of Developmental Disabilities for State of Washington, Appellants.
Nos. 25952-8-III, 25953-6-III, 25954-4-III, 25955-2-III.
Court of Appeals of Washington, Division 3.
April 17, 2008.
*872 John S. Meader, Olympia, WA, for Appellants.
Hugh Kelly, Spokane, WA, for Respondents.
SWEENEY, J.
¶ 1 The application of the doctrine of equitable estoppel must be based on findings that support each of the doctrine's required elements. And in this appeal from an administrative ruling, the findings at issue are those of the administrative law judge. Here, there are no findings or conclusions that would support the application of equitable estoppel against the State. And we, therefore, reverse the superior court's conclusion to the contrary.

FACTS
¶ 2 Hugh and Deborah Kelly adopted Samantha, Michael, Shad, and Courtney Kelly between 1994 and 1999. Each of the children has severe disabilities.
¶ 3 The Kelly parents and caseworkers from the Department of Social and Health Services (Department) discussed the necessity of what is called Medicaid Personal Care hours to maintain these children in their adoptive home. These personal care hours are services provided through the Division of Developmental Disabilities (Developmental Disabilities), a division of the Department. The personal care included support to meet basic personal needs like bathing, dressing, and eating. The Kelly parents were told that the personal care services would be available through Developmental Disabilities. And for approximately seven years the agency provided 96 personal care hours per month per child. Clerk's Papers (CP) at 105.
¶ 4 The Department adopted a new system to evaluate the functional needs of those receiving these services in 2003 and 2004. The new system is called CARE for Comprehensive Assessment Reporting Evaluation. The Department conducted an evaluation under this new system and based on the results reduced the services to the Kellys significantly.
¶ 5 The Kellys appealed this reduction. An administrative law judge held a hearing and ultimately concluded that the Department's calculation of the hours of service the Kellys were entitled to was proper. The administrative law judge also concluded that the Kellys received proper notice regarding the reduction of personal care hours. The Kellys petitioned for review claiming inadequate notice of the reduction of hours and estoppel. The Department's Board of Appeals rejected both arguments. The Kellys appealed to superior court. The superior court reversed the Board of Appeals' decision: "After reviewing the Hearing and Agency Record . . . [the trial judge was] clearly convinced [that] there is not substantial evidence to support the order upholding the reduction of MPC hours." CP at 107. The Department appeals.

DISCUSSION
¶ 6 The Department first argues that the Kellys did not preserve the issue of equitable estoppel for appeal and they raise this issue for the first time on appeal. But it appears that the judge for the Board of Appeals did address the question:
With regard to the equitable estoppel claim which was raised by the Appellant's [Kellys] representative as a defense to the Department's proposed reduction in the Appellant's [Kellys] MPC [Medicaid Personal Care] hours . . .
CP at 23; Resp't's Br.App. B. And the Kellys raised the question before the superior court. They represented that the Department made promises or representations, and that it should be estopped from "denying, terminating and or reducing Medicare Personal Care Hours." CP at 3; Resp't's Br.App. C.
¶ 7 We, like the superior court, review an administrative decision based on the agency record. RCW 34.05.558; Costanich v. Dep't of Soc. & Health Servs., 138 Wash. App. 547, 553-54, 156 P.3d 232 (2007). Significantly here, we review the agency's findings of fact and not the superior court's findings. Providence Hosp. of Everett v. Dep't of Soc. & Health Servs., 112 Wash.2d 353, 355, 770 P.2d 1040 (1989); RCW 34.05.570(3). Neither this court nor the superior *873 court is free to craft its own findings based on the administrative record. See Costanich, 138 Wash.App. at 556, 156 P.3d 232. We, and the superior court, must base our conclusions on those findings made by the administrative law judge. Morgan v. Dep't of Soc. & Health Servs., 99 Wash.App. 148, 151, 992 P.2d 1023 (2000).
¶ 8 Indeed, we ground our decision in the findings of the administrative law judge. Bond v. Dep't of Soc. & Health Servs., 111 Wash.App. 566, 571-72, 45 P.3d 1087 (2002). And here, neither the State nor the Kellys assign error to any finding of fact of the administrative law judge. Therefore, they are verities for this appeal. Campbell v. Dep't of Soc. & Health Servs., 150 Wash.2d 881, 888, 83 P.3d 999 (2004).
¶ 9 We will reverse an administrative order if (1) it is based on an error of law, (2) it is unsupported by substantial evidence, (3) it is arbitrary or capricious, (4) it violates the constitution, (5) it is beyond statutory authority, or (6) the agency employs improper procedure. RCW 34.05.570(3); Olmstead v. Dep't of Health, Med. Section, 61 Wash.App. 888, 891-92, 812 P.2d 527 (1991).
¶ 10 We can then substitute our judgment for that of the administrative body on questions of law. Kellum v. Dep't of Ret. Sys., 61 Wash.App. 288, 291, 810 P.2d 523 (1991). But we accord substantial weight to the agency's interpretation of the law it administers  especially when the issue falls within the agency's expertise. St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wash.2d 690, 695, 801 P.2d 212 (1990); US W. Commc'ns, Inc. v. Util. & Transp. Comm'n, 86 Wash.App. 719, 728, 937 P.2d 1326 (1997).
¶ 11 Here, the superior court concluded that the Board of Appeals incorrectly applied the doctrine of equitable estoppel. And the superior court judge was "clearly convinced there is not substantial evidence to support the order upholding the reduction of the MPC hours." CP at 107.
¶ 12 Equitable estoppel against a governmental agency requires a showing of (1) an admission, statement, or act by the government inconsistent with its later claim; (2) reliance on the admission, statement, or act; (3) injury to the relying party if the government were allowed to contradict or repudiate its prior admission, statement, or act; (4) the necessity of estoppel to prevent a manifest injustice; and (5) no impairment of governmental functions if estoppel is applied. Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743-44, 863 P.2d 535 (1993); Bond, 111 Wash.App. at 575, 45 P.3d 1087.
¶ 13 The Kellys do not point to a single finding by the administrative law judge here that would support any element of equitable estoppel, let alone every element. In fact, there are no findings addressing questions of promises or statements made before adoption, reliance on such statements, or manifest injustice. Initial Order, Admin. R. for Michael Kelly, at 63-70; Admin. R. for Samantha Kelly, at 63-73; Admin. R. for Shad Kelly, at 62-69; and Admin. R. for Courtney Kelly, at 63-70. And the findings by the superior court in support of its conclusions are superfluous. Motley-Motley, Inc. v. Pollution Control Hearings Bd., 127 Wash.App. 62, 72, 110 P.3d 812 (2005).
¶ 14 Moreover, a review board later concluded that none of the elements of equitable estoppel had been met: "There is no evidence in the record of a verbal or written promise to maintain CARE support hours at a particular level for each child." Review Decision and Final Order, Admin. R. for Michael Kelly, Samantha Kelly, Shad Kelly, and Courtney Kelly, at 14.
¶ 15 Again, we sit in the same position as the superior court did here, as a court of review. Utter v. Dep't of Soc. & Health Servs., 140 Wash.App. 293, 299, 165 P.3d 399 (2007). The legal conclusion that the State should be equitably estopped from reducing the level of service here must be based on specific findings addressing each of the elements necessary to support equitable estoppel. Niemann v. Vaughn Cmty. Church, 154 Wash.2d 365, 374-75, 113 P.3d 463 (2005); Campbell, 150 Wash.2d at 902-03, 83 P.3d 999. Neither this court nor the superior court is free to craft findings to support a *874 legal conclusion rejected by the administrative law judge and the appeals board.
¶ 16 We reverse the decision of the superior court which reversed the decision of the Board of Appeals.
I CONCUR: KULIK, J.
BROWN, J. (dissenting).
¶ 17 I am disquieted at the specter of the State broadly encouraging Hugh and Deborah Kelly (the Kellys) to adopt four severely disabled children and take on an enormous care responsibility by broad statements and actions, if not a specific promise, importing that the Kellys would receive full Medicaid Personal Care (MPC) benefits. Then, after years of full benefits under the Legacy assessment, the State altered the status quo by implementing the new Comprehensive Assessment Reporting Evaluation (CARE) tool, causing reduced MPC benefits. While I agree that promissory estoppel fails, I agree with the trial court that equitable estoppel principles apply to prevent a reduction in MPC hours.
¶ 18 I am unconvinced that the CARE tool properly assesses the combined effect on the Kellys of having four disabled children in their care. RCW 74.09.520(4) operates to reduce the personal care services benefit "to the extent funding is available according to the assessed level of functional disability." RCW 74.09.520(4) states service reductions necessary for funding reasons are to be accomplished in a manner assuring service priority "is given to persons with the greatest need as determined by the assessment of functional disability." The CARE tool purports to implement the RCW 74.09.520(4) requirements and cuts needed services to fit the available money. The CARE tool prioritization, however, does not mean that the Kellys do not remain in serious need.
¶ 19 WAC XXX-XX-XXXX allows equitable estoppel. Department of Social and Health Services' broad statements and actions induced reliance by the Kellys to adopt these children, satisfying the first two WAC XXX-XX-XXXX elements. The third WAC XXX-XX-XXXX element is injury. The Kellys will assume the balance of care burden for the four children. Dr. Luber testifies the children will suffer as a result of the reductions.
¶ 20 The fourth manifest injustice element is satisfied because the State made statements and acted to encourage adoption using projected full care. After many years, the State altered the status quo by injecting the CARE tool to redistribute care services. The Kelly children undisputedly continue to have serious need and it would be unjust to reduce their potential. It would be unjust to the Kellys to require them to personally attempt to replace those services and devote their entire lives to that end. If the State had not encouraged the Kellys to adopt, the State would have been required to provide the services.
¶ 21 Finally, the fifth equitable estoppel element addresses the impairment of governmental functions. Certainly, limited funds are available for services needed by many families and children. The State argues more needy children would be deprived of services for the Kelly children to continue at the preexisting care level. While that may be true, it does not lessen the serious needs of the Kelly children or the benefit the State derived from encouraging adoption. Moreover, the State function of encouraging similar adoptions will be impaired if service reductions like this are permitted.
¶ 22 Granted, necessary monetary relief is normally provided by legislative and executive policy makers in the form of budget decisions, however, considering all, the State should be equitably estopped from reducing care for the Kellys. Because I would affirm the trial court, I respectfully dissent.