IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEROME GREEN, | ) | |
| | ) | No. 38275-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON DEPARTMENT OF | ) | UNPUBLISHED OPINION |
| SOCIAL AND HEALTH SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Despite posted instructions, Jerome Green failed to thicken his

elderly mother's liquids, and he thereby created a choking hazard for the vulnerable

adult. Green appeals, on many procedural and substantive grounds, a finding by the

Department of Social and Health Services (DSHS) Board of Appeals (BOA) that he

neglected a vulnerable adult. Because substantial evidence confirms the finding and

because the BOA and an administrative law judge (ALJ) followed prescribed procedures,

we affirm.

FACTS

This proceeding arises from Jerome Green's care for his mother, Jane. Jane, a

pseudonym, is a blind elderly woman who suffers from dementia. Jane also has a

daughter, Sherri Green.  Jerome Green held a power of attorney for Jane.  Jane receives caregiving through the State of Washington.

On September 10, 2018, Jane choked on food or drink while Sherri Green cared for her.  Sherri performed the Heimlich maneuver to clear Jane's airway.  Sherri rushed Jane to the emergency room of a hospital.  AR 541.  Following the emergency room visit, a doctor wrote a plan to reduce risk of future aspiration:

> Continue thickening supplement to reduce risk for aspiration. Recommend cutting all food into small pieces; should avoid nuts, berries, and grapes since these can be difficult to swallow and put at risk for aspiration and choking.

Administrative Record (AR) at 542.

Following Jane's trip to the emergency room, several signs were posted around Jane's kitchen to identify the food and drink that caregivers and family members should provide Jane in order to reduce the risk of choking.  Three of the posters instructed care givers to add a thickening supplement to all liquids.

Jerome Green sometimes cared for Jane, during which time he fed and hydrated his mother.  He often provided Jane water without adding any thickening supplement. Jerome Green's sister, Sherri Green, called police on numerous occasions asserting that Jerome failed to feed and hydrate Jane appropriately.

Adult Protective Services (APS), a division of the DSHS, investigated Jerome Green's care for Jane.  The investigator made attempts to interview Green, but Green

2

declined an interview. As a result of the investigation, APS issued an initial substantiated finding that Jerome Green had neglected Jane.

PROCEDURE

On January 30, 2019, DSHS sent by certified mail a letter to Jerome Green that read:

> The Department of Social and Health Services (DSHS) Adult Protective Services (APS) program recently investigated a report that you may have mistreated a vulnerable adult. . . .
> **Because this APS decision will limit where you can work or volunteer for the rest of your life if not appealed, you should read this letter carefully [RCW 74.39A.056(2)].**
> . . . .
> APS' initial finding will become final, and your name will be placed on a lifetime registry if:
> - You do not request a hearing within 30 calendar days;
> - You withdraw (cancel) your hearing request;
> - You do not appear at your hearing on time;
> - After a hearing, the judge upholds our finding.
>
> The public can request registry information. Some employers must check the registry before hiring or keeping an employee, particularly for jobs with unsupervised access to vulnerable adults or children.
> If it is determined that the evidence does not support the APS finding, your name will not be placed on the registry.
> . . . .
> If the APS finding becomes final, you may not work in a position or hold a license that involves the care of vulnerable adults or children or work or volunteer in a position that gives you unsupervised access to vulnerable adults or children. DSHS may disclose the substantiated finding and your name to anyone who requests it from APS or the DSHS Background Check Central Unit.

AR at 450-52. On February 22, 2019, DSHS remailed the letter to a new address. Green received the February 22 mailing.

3

Jerome Green requested a hearing before an Office of Administrative Hearings ALJ. At the hearing, Green admitted that he knew Jane had earlier suffered a choking emergency. He conceded awareness of the signs placed in his mother's kitchen. Finally, Green also admitted providing Jane with water on numerous occasions without adding any thickening supplement. The ALJ affirmed the finding that Green had neglected a vulnerable adult.

Jerome Green appealed the ALJ's final substantiated finding to the DSHS BOA. The BOA affirmed the finding that Jerome Green had neglected Jane. The BOA entered findings of fact, which read in part:

> 6. [Jane's] August 28, 2018, Amended Durable General Power of Attorney of Jerome K. Green provides, in relevant part:
> "My agent shall have power to consent to, or to withhold consent from, medical treatment, shall have all powers necessary or desirable to provide for my support, maintenance, health and comfort. . . ."
> . . . .
> 9. [Jane's] medical records show that she was admitted to the emergency room on September 10, 2018, for treatment of aspiration. [Jane] had eaten, and when [Jane's] daughter checked on her, [Jane] was not breathing. [Jane's] daughter performed the Heimlich maneuver to clear [Jane's] airway.
> 10. At hearing, [Jerome Green] testified that he had found out that [Jane] had been taken to the emergency room, and knew as of September, 2018, at least that [Jane] had choked on her food.
> 11. [Jane's] medical records show that she was seen on September 19, 2018, for a follow up visit after the emergency room visit on September 10, 2018, and [Jane's] physician determined that [Jane] was at risk for aspiration.
> 12. On September 19, 2018, [Jane's] physician prescribed the following steps to mitigate [Jane's] aspiration risk:

"Referred to St. Luke's rehab for (sic) evaluate ability to swallow. . . . Continue thickening supplement to reduce risk for aspiration. Recommend cutting all foods into small pieces, should avoid nuts, berries and grapes since these can be difficult to swallow and put at risk for aspiration and choking. . . . OCCUPATIONAL THERAPY REFERRAL— Note to Provider: 98 y/o female with trouble swallowing and frequent choking with eating and drinking. She is at risk for aspiration. She is referred for evaluation and treatment."

. . . .

15. At some point after [Jane] returned from her emergency room visit, several signs were posted in [Jane's] kitchen.

16. One of the signs appears on letterhead from St. Luke's Rehab and Physical Therapy, and states in part "Nectar thick liquids/mechanically altered, small, controlled sips w/assistance."

17. A hand written sign was posted in [Jane's] kitchen that states "All Liquids use -> Thicken-Up Dr. Gleason Order." (Sic).

18. A type-written sign was posted in [Jane's] kitchen that states, in relevant part: "Care-givers and Family members: Continue thickening supplement to reduce risk for aspiration."

19. [Jerome Green] testified at hearing that he saw these posted signs.

. . . .

22. [Jerome Green] testified at hearing that he had never thickened any water that he provided to [Jane], and he had provided her with water on several occasions.

AR at 212-14 (alteration in original) (footnotes omitted).

Jerome Green appealed to the superior court. After reviewing the transcript of the ALJ hearing and the BOA file, the superior court affirmed the BOA's final order.

LAW AND ANALYSIS

On appeal, Jerome Green assigns error to the superior court's failure to grant him a hearing de novo, the ALJ's lack of a finding that his sister caused Jane to choke, the sufficiency of evidence for the finding that he neglected his mother, the purported lack of

5

an opportunity to speak with the investigator before issuance of charges, the purported

failure of APS to warn him of his burden of proof, the standard of proof applied by the

ALJ and BOA, and an alleged failure to warn him of consequences of the finding of

neglect. His assignments of error either are factually incorrect or legally unsound.

### De Novo Hearing

Jerome Green argues that the law demanded that the superior court afford him a

trial de novo of the final administrative order. In support, he cites to RCW 34.05.510(3),

which declares:

> This chapter [34.05 RCW] establishes the exclusive means of
> judicial review of agency action, except:
>     . . . .
> (3) To the extent that de novo review or jury trial review of agency
> action is expressly authorized by *provision of law*.

(Emphasis added.) Green provides no citation to another provision of law expressly

authorizing de novo review of a neglect finding by APS. We find none. Therefore, we

reject this assignment of error.

### Lack of Finding

Jerome Green next faults the ALJ and presumably the BOA for failing to enter a

finding that Sherri Green caused the mother to choke on September 10, 2018.

Nevertheless, the evidence does not show that Sherri was feeding or hydrating the

mother, let alone that anyone knew of the mother's susceptibility to choking, at the time

6

of the choking. More importantly, any neglect by Sherri does not absolve Jerome Green of his later neglect at a time when signs told family members to thicken Jane's liquids.

Finding of Neglect

Jerome Green appeals the BOA's finding of neglect entered against him. RCW 74.34.020(15)(b) (former RCW 74.34.020(16)(b) (2020)) defines "neglect" of a vulnerable adult, as relevant in this case:

> "Neglect" means . . . an act or omission by a person or entity with a duty of care that demonstrates a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety.

A finding of neglect under RCW 74.34.020(15)(b) demands the presence of three elements. *Woldemicael v. Dep't of Social & Health Services*, 19 Wn. App. 2d 178, 183-84, 494 P.3d 1100 (2021). The BOA in this case divided those elements into five constituents: (1) that Jerome Green had a duty of care, (2) owed to a vulnerable adult, (3) that Green did an act or omission, (4) the act or omission demonstrated a serious disregard of the consequences, and (5) the serious disregard was of such a magnitude to constitute a clear and present danger to the vulnerable adults' health, welfare, or safety.

The applicable regulation defines "person with a duty of care" in the context of a vulnerable adult neglect finding to include a person "who voluntarily agrees to provide, or has been providing, the basic necessities of life to the vulnerable adult on a continuing basis." WAC 388-103-0001(14)(c)(ii) (former WAC 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 (2018)). The BOA

found Jerome Green owed a fiduciary duty as power of attorney to keep himself apprised with Jane's medical needs. A person owing a fiduciary duty to another inhabits a sacred trust relationship. *Raven v. Department of Social & Health Services*, 177 Wn.2d 804, 823, 306 P.3d 920 (2013). Even without holding the power of attorney, Jerome Green met the regulatory definition of someone providing the basic necessities of life to Jane on a continuing basis in his role as a son. Thus, Jerome Green owed Jane a duty of care under WAC 388-103-0001(14)(c)(ii).

Jerome Green does not dispute that Jane was a vulnerable adult. "Vulnerable adult" includes a person sixty years of age or older who has the functional, mental, or physical inability to care for himself or herself or who receives care from a licensed home care agency. RCW 74.34.020(21)(a), (e). Jane received home care from a licensed agency.

Jerome Green argues that no evidence supported the BOA's conclusion that he never thickened the water he gave to Jane. The BOA relied on Green's own admission at the administrative hearing that he did not thicken Jane's water. The BOA may rely on Green's testimony. Because of the posted warnings, we agree the failure to thicken constituted an omission of neglect.

Jerome Green challenges the finding that his conduct constituted a serious disregard of consequences. In *Brown v. Department of Social & Health Services*, 190 Wn. App. 572, 360 P.3d 875 (2015), this court interpreted the Abuse of Children Act's

8

"neglect" standard to impart a higher standard of proof than is typical for a common-law finding of negligence based on the reasonable person test. Under *Brown*, this court reviews Jerome Green's conduct in light of the neglect standard's more "lengthy language." In other words, "'serious disregard' implies greater blame than want of reasonable care or negligence." 190 Wn. App. at 590. The language this court analyzed in *Brown* is identical to the language used in determining whether a vulnerable adult has been neglected. *Compare* RCW 26.44.020(19) (child neglect standard), *with* RCW 74.34.020(15)(b) (pertinent vulnerable adult neglect standard). Under *Brown*, an individual acts in serious disregard when that person knows or has reason to know of facts that would lead a reasonable person to realize that his or her conduct creates an unreasonable risk of bodily harm to another and that there is a high probability that substantial harm will result. 190 Wn. App. at 590.

Jerome Green argues that he had no knowledge of the need to thicken Jane's water. Nevertheless, Green admitted to awareness that Jane had visited a hospital emergency room as a result of a choking incident and he knew of the signs posted in Jane's kitchen. Even if Green did not actually read the signs, his testimony demonstrated sufficient awareness of the risks posed to Jane's health that he acted in serious disregard of Jane's health by failing to read the signs.

Jerome Green argues that the signs posted in the kitchen did not evince a requirement that Green thicken Jane's water. We disagree. Three of the signs instructed caregivers and family members to add thickening supplement to all liquids.

Akin to the statutory language requiring a "serious disregard of the consequences," the "use of the idiom 'clear and present danger' . . . suggests more serious misconduct than mere negligence." *Brown v. Dep't of Social & Health Services*, 190 Wn. App. 572, 591 (2015). Jerome Green argues that no evidence in the record suggested that failure to thicken Jane's water would constitute a clear and present danger to her health. We disagree once again. A medical treatment plan provided specific instruction, including the thickening of liquids, to mitigate a future risk of aspiration. The failure to add thickening agent into Jane's water constituted a clear and present danger of a choking risk to Jane.

Precharge Interview

Jerome Green criticizes APS because its investigator failed to interview him before APS filed charges. He argues he should have been afforded the opportunity to explain his conduct before APS took action.

Jerome Green does not identify any legal authority that an accused person possesses the right to meet with an investigator before issuance of a charging document. RCW 74.34.067, which controls APS investigations into allegations of neglect, provides no requirement that an investigator attempt to interview the alleged neglector.

10

Regardless, the investigator sought to interview Green and Green failed to cooperate. An accused person could indefinitely avoid an adverse finding by simply refusing to speak with an investigator.

Burden of Proof

Jerome Green next complains that APS failed to notify him of his burden of proof at the administrative hearing in order to prove that he had not neglected his mother. The statutes and regulations controlling the administrative proceedings are publicly available. Jerome Green was represented by counsel to assist him in understanding the laws. Green provides no authority suggesting that the State ever bears the burden to educate an opposing party.

Preponderance of Evidence Standard

Jerome Green argues that the ALJ and BOA should have applied a clear, cogent, and convincing evidence standard rather than a preponderance of evidence standard of proof. Under a regulation, a "preponderance of the evidence" standard applies in determining whether to uphold an initial substantiated finding of neglect. WAC 388-103-0140.

In *Hardee v. Department of Social & Health Services*, 172 Wn.2d 1, 21, 256 P.3d 339 (2011) (plurality opinion), the state Supreme Court held that the preponderance of the evidence suffices to satisfy due process when an administrative adjudication results in revocation of a professional license. While *Hardee* does not necessarily govern this

11

court's analysis of Jerome Green's potential liberty deprivation attended to the APS

finding of neglect, *Hardee's* reasoning applies. A heightened evidentiary standard is not

necessary to curtail erroneous findings of neglect when existing procedures afford

significant safeguards. The State holds a strong interest in the protection of vulnerable

adults and in regulating individuals with access to vulnerable populations when such

individuals have previously abused or neglected vulnerable persons.

Notice of Registry

Jerome Green contends that DSHS should be required to inform an individual

before placing his or her name on the State's vulnerable adult abuse registry. Green does

not complain that he was uninformed that an initial substantiated finding of neglect had

been entered against him. Instead, Green asserts that failure to notify him of the final

substantiated finding and of his ultimate placement on the vulnerable adult abuse registry

resulted in a lack of reasonable opportunity to seek removal of his name from the

registry.

A fundamental requirement of due process is notice reasonably calculated to

apprise interested parties of the pendency of an action and afford them an opportunity to

present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,

314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Due process protects the right to an accused

person to notice of the opportunity to request a formal hearing. *Pal v. Department of

Social & Health Services*, 185 Wn. App. 775, 784, 342 P.3d 1190 (2015).

Washington's Administrative Procedure Act, chapter 34.05 RCW, requires a Washington agency to give advance written notice to all parties to an adjudicative administrative hearing. RCW 34.05.434(1). Notice must contain a "short and plain statement of the matters asserted by the agency." RCW 34.05.434(2)(h). A regulation also requires DSHS to adhere to relevant regulations when delivering notice to an alleged perpetrator of neglect. WAC 388-103-0040 to -0080.

The prehearing notice to Jerome Green by itself satisfied APS' due process obligation to apprise Green of the pendency of the action against him. The notice informed Green that a final substantiated finding would result in his placement on the vulnerable adult abuse registry and of the collateral consequences thereof. Green admitted receiving the notice, and he appeared at the hearing. DSHS had no due process obligation to inform Green again of the consequences when the substantiated finding of neglect became final.

Jerome Green complains that the law affords him no opportunity to remove his name from the vulnerable adult abuse registry maintained by DSHS. We do not know if Green complains about the inability to remove his name assuming he wins an appeal or the inability to remove his name at some indefinite time in the future after the ALJ and BOA affirm DSHS' finding. Perhaps he complains of both. If the accused wins his or her appeal, the accused's name does not enter the registry. WAC 388-103-0160.

13

At the time of Jerome Green's hearing before the ALJ and BOA, one's listing on the registry was permanent. The law has since changed. Even if the accused loses his or her appeal, a regulation recognizes that DSHS might remove the name from the registry. WAC 388-103-0180, a regulation adopted in 2021, reads in relevant part:

> (2) A final substantiated finding may be reversed, and the person's identifying information removed from the vulnerable adult abuse registry, if:
> (a) The department determines the final substantiated finding was made in error. . .

In his appellate brief, Jerome Green provides no authority to support the unconstitutionality of the inability to later remove one's name from the registry, assuming he had no such opportunity. Naked castings into the constitutional seas are not sufficient to command judicial consideration and discussion. *Public Hospital District No. 1 of King County v. University of Washington*, 182 Wn. App. 34, 49, 327 P.3d 1281 (2014).

Jerome Green also highlights WAC 388-103-0190(2), a regulation that requires notice within 10 days of a final substantiated finding to certain entities when the perpetrator "is an individual used by a nursing home to provide services to residents of such nursing home." Green was not employed by a nursing home.

14

No. 38275-3-III,
*Green v. Dep't of Social & Health Services*

Due Process

Jerome Green also contends that APS and BOA violated his constitutional right to due process. Nevertheless, this argument repeats contentions we have already addressed.

CONCLUSION

We affirm the APS' finding of neglect of a vulnerable adult entered against Jerome Green.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.

15